## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT A. ACOSTA,

     *Plaintiff*,

          CASE NO. 14-10212

          DISTRICT JUDGE NANCY G. EDMUNDS

*v.*          MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF
SOCIAL SECURITY,

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON MOTION FOR ATTORNEY'S FEES (Doc. 20)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motion for

award of attorney fees under 42 U.S.C. § 406(b) (Doc. 20) be **GRANTED IN PART**.

## II.    REPORT

### A.    Introduction and Background

Pursuant to an order of reference from United States District Judge Nancy Edmunds,

before the Court is Plaintiff Robert Acosta's motion for attorney fees under § 206(b)(1) of the

Social Security Act, 42 U.S.C. § 406(b)(1). (Doc. 20).

Plaintiff applied for benefits under the Disability Insurance Benefits program of Title II,

42 U.S.C. § 401 *et seq*., and the Supplemental Security Income program of Title XVI, 42

U.S.C. §§ 1381 *et seq*. in January 2011, alleging an onset date of March 23, 2008. (Doc. 14 at

4). Plaintiff's application was denied at the initial level, by an Administrative Law Judge

("ALJ"), and by the Appeals Council. (*Id*.). Plaintiff then filed for judicial review of his claims

on January 16, 2014. (Doc. 1). Plaintiff's attorney, Meredith Marcus, filed a motion for summary judgment on May 23, 2014, arguing that the matter should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). (Doc. 14). On June 30, 2014, Judge Edmunds entered a stipulation and order that the matter would be remanded to the Commissioner for further administrative action. (Doc. 16). Judgment was entered contemporaneously with that order. (Doc. 18).

On September 29, 2014, Judge Edmunds entered a stipulation and order awarding fees under the Equal Access to Justice Act ("EAJA") to Plaintiff, in the amount of $3,052.00. (Doc. 18). That stipulation was entered "without prejudice to Plaintiff's right to seek attorney fees under section 206(b) of the Social Security Act, 42 U.S.C. § 406(b)." (*Id*.). The EAJA fee "belong[ed] to Plaintiff, and not to his attorney, and may be offset to satisfy any pre-existing debt that Plaintiff owes the United States . . . ." (*Id*. at 1-2). However, upon finding that Plaintiff had no such debts to offset, the Commissioner was to direct that "the award be made payable to Plaintiff's attorney pursuant to the EAJA assignment duly signed by Plaintiff and counsel." (*Id*. at 2).

Nearly two years later, on June 15, 2016, Plaintiff filed the instant petition for attorney's fees pursuant to § 206(b)(1) of the Social Security Act, 42 U.S.C. § 406(b)(1). (Doc. 20). In that motion, Plaintiff notes that his claim for DIB prevailed on remand, and that on December 23, 2015, he was awarded benefits backdated to June 2010, in the amount of $100,092.00. (*Id*. at 1-2). Twenty-five percent of this award was set aside for payment of attorney's fees, amounting to $25,023.00. (*Id*. at 2). Plaintiff notes that his administrative fee agreement was "approved by the Administrative Law Judge but then disapproved by the Payment Center."

(*Id.*). Plaintiff then issues (or perhaps quotes) a directive: "Petitioner shall file a fee petition with the ALJ in the amount of $6,000 for the work performed at the administrative level, which represents 5.99% of the total past-due benefits award."[1] (*Id.*). He then "requests that the remainder, amount of $19,023.00, which represents 19.01% of the combined past-due benefit amount, be awarded to his counsel, Frederick J. Daley, Jr., in accordance with the fee agreement entered into between Plaintiff and the undersigned." (*Id.*).

### B.     42 U.S.C. § 406 Standards

"The prescriptions set out in §§ 406(a) and (b) establish the exclusive regime for obtaining fees for successful representation of Social Security benefits claimants." *Gisbrecht v. Barnhart*, 535 U.S. 789, 795–96 (2002). Section 406(a) addresses payment for representation in administrative proceedings before the Commissioner, whereas section 406(b) deals with payment for representation in court.

Under § 406(a)(A), where a claimant is entitled to past-due benefits, a fee may be paid to the claimant's representative for services rendered at the administrative level. That fee may not exceed the lesser of twenty-five percent of the amount of past-due benefits, or $6,000. 42 U.S.C. § 406(a)(2)(A)(ii)(I)-(II).

Under § 406(b), where a claimant is "represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation." 42 U.S.C. § 406(b)(1)(A). However, that award must likewise not exceed "25 percent of the total of the past-due benefits." *Id*.

---

[1] Plaintiff's directive is particularly confusing because it suggests that his attorney has already received $6,000 under the EAJA, and now seeks $19,023 such that his attorney will be awarded with 25% of Acosta's total past-due benefits, which totaled $100,092.

The Sixth Circuit has determined that fees awarded under § 406(a) and § 406(b) are to be considered separately, such that a claimant's attorney who represents the claimant both before the Commissioner and before a court "may receive total fees exceeding twenty-five percent of the claimant's benefits award." *Booth v. Comm'r of Soc. Sec.*, 645 F. App'x 455, 457 (6th Cir. 2016).[2]

### C.   Analysis

#### i.      Application of Local Rule 54.2

On December 23, 2013, Plaintiff signed a contingency fee agreement with his attorney providing that, if past-due benefits were recovered, twenty-five percent of those fees would be held in escrow for payment of fees to his attorney, and that "representation in court will not cost me more than 25% of the past due benefits." (Doc. 20 at Ex. B). Further, the agreement provides that Plaintiff assigned any EAJA award to his attorney, which would be used to offset other amounts due under the agreement. (*Id.*). The agreement also states that "any fee awarded to my attorney for the Court representation is separate from work performed at the administrative level." (*Id.*).

As noted above, Daley waited nearly two years between the administration of EAJA fees and his filing of this instant motion for attorney's fees. Daley asserts that Plaintiff received his "DIB Notice of Award letter" on February 12, 2016, and that the "final Notice of Award letter" was not yet mailed as of the date of his motion. (Doc. 20 at 6). However, Daley admits that he contacted one of the Commissioner's representatives on May 24, 2016, and was told

---

[2] It is unclear if the Sixth Circuit's interpretation of § 406(a)-(b) permits an award of up to fifty percent of a claimant's past-due benefits.

4

that the final notice of award "will not change the amount withheld for direct payment of an attorney fee." (*Id.* at 6-7).

The Commissioner notes that Daley's plea is untimely under Local Rule 54.2(a), which provides that

> Attorneys representing clients in social security disability claims under Title II of the Social Security Act who seek District Court approval under 42 U.S.C. § 406 must file and serve a social security fee motion no later than 14 days after entry of judgment or receipt of the social security certificate award (notice of award), whichever is later.

Judgment in this case was entered on June 30, 2014 (Doc. 17), and the notice of award was dated February 9, 2016 (Doc. 20 Ex. A). Daley was thus required to submit his fee motion under § 406 by February 23, 2016. Daley's motion, submitted on June 15, 2016, was filed nearly four months late. Time limits for attorney fee motions are not jurisdictional, and may be waived where appropriate. *See Soberay Mach. & Equipment Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999). The Commissioner in this matter "takes no position on whether the timing of the petition should affect the fee award." (Doc. 22 at 2).

In response, Daley asserts that the February 9, 2016, notice of award was not final and thus did not begin the fourteen day clock under Local Rule 54.2. (Doc. 24 at 2). Daley points out that the notice of award was subject to reduction "if you received SSI" during the period of post-due DIB benefits at some later, unspecified date. (*Id.*). Indeed, Acosta received SSI benefits beginning in April 2014 pursuant to a separate application. (*Id.* Ex. 1). Daley asserts that the Commissioner had still not, as of the date of his motion for fees, provided a final award notice. (*Id.* at 2). Daley also points to a June 16, 2016, letter from the Commissioner stating that he had been overpaid to the tune of $9,473.40, and that DIB payments would not issue

5

until he paid back said amount. (*Id*. Ex. 2). Where Acosta experienced overlapping periods of eligibility for SSI and DIB, Daley argues that he reasonably delayed filing his motion for fees until the Commissioner sorted out the inevitable offset between those incompatible periods of eligibility. (*Id*. at 3). Finally, Acosta notes that the Commissioner represented that "they were working on a final notice of award," even after asserting that the amount withheld to pay Acosta's attorney fees would not change. (*Id*.). Daley thus argues that his petition should be found timely, given the late issuance date of the final notice of award, or otherwise that equitable tolling should apply. (*Id*. at 4).

Daley's concerns are not unreasonable. The Commissioner in this matter erroneously paid SSI benefits to a claimant who was in actuality eligible for DIB. That error resulted in the overpayment of nearly ten thousand dollars in the form of SSI payments, which the Commissioner later demanded be refunded prior to issuing DIB payments. Where Acosta might be ordered to repay such a substantial amount, Daley was justifiably cautious regarding whether his fee (which is wholly derivative of Acosta's past-due benefits) would be affected. If Acosta filed his motion for attorney's fees upon receipt of the Commissioner's DIB notice of award, and if the Commissioner later reduced Acosta's DIB award, further court proceedings might have been necessary to claw back a portion of Daley's fees. In this sense, Daley's choice to delay his motion was respectful of the Court's resources, and indeed of all parties to this case.

The Commissioner responds that, even assuming that Daley's delay was rational, he ought to have known that the amount set aside for fee purposes would not change as of May

6

26, 2016, and therefore should have filed his motion no later than June 7, 2016. (Doc. 22 at 3). Daley's motion for fees was filed about a week later, on June 15, 2016. (Doc. 20).

Judges in this circuit have had little occasion to consider the application of Local Rule 54.2, and the Court was unable to locate any decision specifically addressing the situation at hand in this matter. However, *Cordice v. Astrue*, No. 1:09-CV-254-JAW, 2012 WL 243089, at *1 (D. Me. Jan. 24, 2012), aff'd, No. 1:09-CV-00254-JAW, 2012 WL 483193 (D. Me. Feb. 14, 2012) a Maine district court addressed a similar scenario. The United States District Court for the District of Maine employs a local rule similar to our rule 54.2, which provided that motions for attorney's fees "shall be filed within 30 days of the date of the Commissioner of Social Security's notice of award that establishes both that there are past due benefits and the amount thereof." *Id*. The claimant's attorney in *Cordice* expressed confusion as to whether Maine's local rule required him to file his motion for attorney's fees within thirty days of the Commissioner's first notice of award, or its final notice of award. *Id*. The Maine district court found that there was "no apparent reason to require piecemeal and repeated awards of attorney fees in Social Security cases involving past-due benefits. Everyone involved, including the court, will be best served by a single such motion to be brought after a final payment amount has been determined by the [Commissioner]." *Id*.

The undersigned is persuaded by the logic expressed in *Cordice*. The Eastern District of Michigan's local rule 54.2 does not distinguish between initial and final notices of award, and thus invites confusion of the sort evident in this case. The Commissioner asserts that Daley should have been on notice as of May 24, 2016, that Acosta's notice of award was final insofar as it might impact the amount of past-due benefits held back for payment of his attorney's fees.

(Doc. 22 at 3). In so arguing, the Commissioner implicitly recognizes that a notice of award, by itself, is not always sufficient to inform a claimant's attorney of the amount of fees withheld to pay their fees. Particularly where the Commissioner's initial notice of award explicitly provides that the amount of benefits due may be subject to change, a cautious and efficient attorney might hold off on filing a motion for fees until that amount has been confirmed by a final notice of award. The Commissioner urges that its informal communication with Daley should have prompted his filing of a motion for fees, yet Local Rule 54.2 makes no reference to off-the-record communications between the Commissioner's representatives, but instead refers only to "entry of judgment" and "receipt of the social security certificate award (notice of award)." EDMI L.R. 54.2. In sum, Daley's confusion over the appropriate time at which to file a motion for attorney's fees is eminently understandable. To reduce unnecessary confusion and duplication of effort, the Court believes that Local Rule 54.2 should be interpreted to provide that a motion for attorney fees is timely when filed within fourteen days of entry of judgment or receipt of a final notice of award, whichever is later.

Unfortunately, because it appears that a final notice of award has still not been issued in this matter, the solution recommended above would nevertheless render Daley's motion for attorney's fees untimely by reason of being early. In *Cordice*, the court's solution was to deny the motion for fees without prejudice pending the Commissioner's final notice of award. No. 1:09-CV-254-JAW, 2012 WL 243089, at *1. In this case, I find that denying Daley's motion without prejudice would generate further, unnecessary duplication of effort. The Commissioner has confirmed, albeit in a manner not conceived of by Local Rule 54.2, that Acosta's past-due benefits amount will "not affect the calculation of past-due benefits." (Doc. 22 at 3). As noted

8

above, Local Rule 54.2 is not jurisdictional, and may be waived. In this matter, where the amount of past-due benefits is not subject to further change, the Court is able to determine the amount of fees due without waiting for an official, final, notice of award. I therefore recommend that Daley's motion for attorney fees be considered timely.

### ii.    Daley's Fee

The Court next examines whether the rate of compensation proposed in Plaintiff's motion for attorney fees is reasonable. In *Hayes v. Sec'y of Health & Human Servs.*, 923 F.2d 418, 422 (6th Cir. 1990), the Sixth Circuit held that "a hypothetical hourly rate that is less than twice the standard rate is per se reasonable, and a hypothetical hourly rate that is equal to or greater than twice the standard rate may well be reasonable." Only when "the calculated hourly rate is above this floor . . . may [the court] consider arguments designed to rebut the presumed reasonableness of the attorney's fee." *Id.*

As noted above, Acosta signed a contingency fee agreement with his attorney. Fee agreements should be "given the weight ordinarily accorded a rebuttable presumption;" deductions from fee agreements are generally the result of "1) those occasioned by improper conduct or ineffectiveness of counsel; [or] 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989). The attorney's fee must be "reasonable" for representation before the court, and must not exceed twenty-five percent of the total past-due benefits. 42 U.S.C. § 406(b). The twenty-five percent cap under § 406 is used "as a starting point for the court's analysis, . . . [but] it is not to be viewed as per se reasonable." *Id.* at 746. Further, attorneys seeking compensation under these statutes have the

burden of demonstrating that their fee is reasonable. *See Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014) (quoting *Gisbrecht* 535 U.S. at 807).

In implementing the standard set forth in *Rodriquez*, courts may consider the following factors: the skillfulness of the attorney's representation; whether counsel acted in a timely fashion; whether counsel will receive a windfall because the amount recovered was inordinately large or was obtained with minimal effort; whether the compensation requested by counsel would result in an impermissibly high hourly rate; and whether the Commissioner has opposed the motion. *See McKinney v. Colvin*, No. 2:14-CV-168, 2015 WL 9269288, at *2 (E.D. Tenn. Dec. 3, 2015) (applying *Rodriquez*) report and recommendation adopted, No. 2:14-CV-168, 2015 WL 9306465 (E.D. Tenn. Dec. 21, 2015). The Sixth Circuit has further noted, albeit outside of the Social Security context, that a "reasonable" rate is "defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

Daley argues that Acosta, based on his age and benefits eligibility, will receive nearly $300,000 in benefits through age sixty-six, such that a fee of $19,023.00 constitutes less than seven percent of Acosta's total award. (Doc. 20 at 5). Daley characterizes this as an "extraordinary" award justifying hearty compensation. Further, Daley asserts that he will "not seek or collect more than 25% of past-due benefits in combined fees." (*Id.* at 6).

In this case, Plaintiff's motion for summary judgment was sufficiently persuasive that it convinced the Commissioner to consent to remanding this matter to the ALJ without the necessity of a court order. The Court has independently reviewed Plaintiff's motion for summary judgment and finds the arguments well-crafted and the reasoning persuasive. (Doc.

10

14). The Court notes that Plaintiff had something of an uphill climb in crafting that motion, because the ALJ premised his decision in large part on discounting Acosta's credibility, an area in which ALJs are accorded significant discretion. (Doc. 14 at 12). This is particularly true where, as here, claimants suffer from ailments like alcohol abuse. *See Arnone v. Comm'r of Soc. Sec.*, No. 1:11-CV-316, 2012 WL 7658385, at *2 fn. 2 (W.D. Mich. Sept. 26, 2012) (collecting cases discussing the impact of drug abuse on credibility), report and recommendation adopted, No. 1:11-CV-316, 2013 WL 838305 (W.D. Mich. Mar. 6, 2013). The ALJ in this matter also failed to consider a disability determination rendered by the Michigan Department of Human Services. (Doc. 14 at 21-23). While remand was therefore perhaps inevitable in this matter, a weaker brief might have resulted in another trip through the administrative stage, rather than the rapid issuance of benefits. In short, the work of Plaintiff's attorney in this matter was skillful and commendable. This is not to say that Plaintiff's case was remarkably complex, as evidenced by the middling, twenty page length of Plaintiff's brief in support of his motion for summary judgment. (Doc. 14). This factor counsels the issuance of a substantial fee reward.

Second, as to timeliness, Daley moved for only one extension of time in this matter, amounting to one month, in which to file his motion for summary judgment. (Docs. 13, 14). The Supreme Court has held that "[i]f the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court." *Gisbrecht*, 535 U.S. at 808. That ruling appears, on its face, to require that any attorney-prompted delay in the case should result in a commensurate reduction in fees. Nevertheless, at least one court outside of this circuit has

concluded that two or more attorney-prompted delays may be permissible without requiring a reduction in attorney's fees. *See Lopez v. Astrue*, No. C 07-02649 PJH, 2011 WL 196885, at *3 (N.D. Cal. Jan. 20, 2011) ("[T]he court finds that the extensions caused no unreasonable delay, or injury. Accordingly, the requested fee amount will not be reduced on this basis."). Other courts have found that any attorney-caused delay, even if commonly granted and not the result of fault, should result in a reduction in fees. *See Coffman v. Comm'r of Soc. Sec.*, No. CV-13-1242-PK, 2015 WL 5008847, at *2 (D. Or. Aug. 20, 2015)

The undersigned is unable to find any precedential case which stands for the proposition that a court may excuse an attorney's delay without requiring a commensurate reduction in fees. The Supreme Court's language in *Gisbrecht* provides no room for leeway: where an attorney causes a delay, a reduction in fees "is in order." 535 U.S. at 808. Attempting to read discretion into *Gisbrecht* invites inconsistent results amongst similarly situated parties. Lacking any principled justification for forgiving attorney-prompted delays in some cases but not others invites inequitable results. A straightforward application of *Gisbrecht* prevents this issue from arising in the first place. An attorney's delays, whether few or numerous, due to fault or as a matter of common practice, should result in a commensurate reduction in their fees.

As noted above, Daley's April 2014 extension in this case resulted in a thirty-day delay. (Docs. 13, 14). The notice of award attached to Daley's motion shows that Acosta was entitled to monthly payments of $1,552.60 in April 2014. (Doc. 20 Ex. A). Daley ultimately seeks twenty-five percent of Acosta's total past-due benefits as his fee. (*Id*. at 2). It is therefore appropriate to reduce Daley's fee by a figure representing the appropriate fee for one month,

i.e., twenty-five percent of $1,552.60, or $388.15. *See Daley v. Colvin*, No. 3:13-CV-0861-PK, 2015 WL 3544650, at *6 (D. Or. June 4, 2015) (applying *Gisbrecht* to reduce an attorney's fees for delay under similar circumstances).

Third, the Court must consider whether Daley's requested fee would result in "a windfall because of either an inordinately large benefit award or from minimal effort expended." *Rodriquez*, 865 F.2d at 746. However, large fees are not "*per se* unreasonable." *Hayes*, 923 F.2d at 422. The Sixth Circuit has found that

> a windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market.

*Id*. The Commissioner suggests that the "inflation-adjusted EAJA rate is the appropriate reference point." (Doc. 22 at 5). In light of the rate paid in this case under the EAJA, the Commissioner suggests that a rate of $369.00 per hour is "*per se* reasonable under *Hayes*," and thus recommends that it be applied to this case.

In *Sykes v. Comm'r of Soc. Sec.*, 144 F. Supp. 3d 919, 924 (E.D. Mich. 2015), District Judge David Lawson noted that the "Sixth Circuit . . . never has endorsed any particular nominal figure or ideal multiplier for the 'standard hourly rate' applicable to the litigation of civil actions under the Social Security Act." Courts in this circuit have regularly found "standard rates" that varied from under $200 per hour, *see Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 310 (6th Cir. 2014), to just over $500 hourly, *see Drenning v. Comm'r of Soc. Sec.*, No. 12-13470, 2014 WL 4705113, at *4 (E.D. Mich. Sept. 21, 2014).

The "standard rate" depends on the skill of the attorney in question and their area of practice. Daley avers that he "has been practicing in the field for over 40 years," that he "has

worked on other matters on a non-contingency basis and charges $500 per hour for his time," and that public benefits attorneys with his level of experience obtain between $285 and $525 for their time. (Doc. 24 at 9).

In support of his claims, Daley provides a State Bar of Michigan survey, which shows that amongst *all* attorneys, regardless of practice area, those with over thirty-five years of experience earned $200 per hour at the twenty-fifth percentile, and $525 at the ninety-fifth percentile. (Doc. 24 Ex. 5). This figure is thus not representative of the rates obtained by Social Security practitioners generally, because it includes numerous other areas of practice, skewing the results. That same exhibit also includes a table representing the billing rates of attorneys within the public benefits practice area ranged between $180 at the twenty-fifth percentile, and $395 at the ninety-fifth percentile[3], though this does not explicitly distinguish between attorneys of different skill within that field, and represents feedback from only fourteen practitioners.[4] (Doc. 24 Ex. 5).

The above analysis applies insofar as Daley is the attorney against whom the reasonability of the award in this case should be measured. While neither party explicitly raises the issue, the Court expresses concern about Daley's role in this case. Attorney Meredith

---

[3] The Court notes that the "2010 Economics of Law Practice" report issued by the State Bar of Michigan found that public benefits attorneys in the ninety-fifth percentile charged $500 per hour. *See* 2010 Economics of Law Practice, https://www.michbar.org/file/pmrc/articles/0000146.pdf, last accessed November 15, 2016. In light of inflation, one would expect the figure to have risen between the 2010 and 2014 surveys, yet the study finds a drop in compensation per hour. The Court declines to delve into speculation as to the cause of this drop, but merely notes that both surveys received a limited number of responses in the area of public benefits (*i.e.* nineteen respondents in 2010, and fourteen respondents in 2014).

[4] Presumably, in line with the other statistics provided in the State Bar of Michigan's survey, public benefits practitioners with greater experience would also garner a higher hourly fee as compensation for their experience. Insofar as this holds true, the table representing public benefits attorneys is probably the more reliable indicator for the actual standard rate for public benefits attorneys of Daley's experience.

Marcus, the "senior associate" at Daley's firm, filed the complaint in this matter on January 16, 2014. (Doc. 1). Marcus was the sole attorney to file papers on behalf of Acosta using the Court's content management and electronic filing system through May 23, 2014, when she filed Acosta's motion for summary judgment. (Doc. 14). Notably, Marcus's signature appears on that motion. (*Id*.).

District Judge Nancy Edmunds issued judgment in this case on June 30, 2016 (Doc. 17), and entered a stipulation and order granting EAJA fees on September 29, 2014 (Doc. 18). On June 15, 2016, Daley appeared on behalf of Acosta (Doc. 19), and he simultaneously filed his motion for attorney's fees (Doc. 20). Daley later filed several motions in support of his motion for attorney's fees (Docs. 23, 24, 25). In short, it appears that Daley had little or nothing to do with this case until after benefits were already won.

Daley's own timesheet, attached to his fee petition, confirms his limited role in this matter. That timesheet shows that non-attorney staff member David Solomonik performed 3.25 hours of work on the Acosta case, that Meredith Marcus worked for 14.35 hours, terminating in her review of the voluntary stipulation to remand, and that attorney Heather Freeman spent one hour reviewing the case. (Doc. 20 Ex. D). That is to say that Daley expended no time on this case through remand, and thus had no influence on Acosta's receipt of benefits. Courts in this district have noted that compensation under § 406(b) "only provides fees for representing claimants the Court," and not for the preparation of fee motions, thus Daley's work on this case cannot be compensated under § 406(b). *See Wummel v. Comm'r of Soc. Sec.*, No. 12-14860, 2016 WL 245287, at *2 (E.D. Mich. Jan. 21, 2016). While the Court does not doubt that Daley

has acquired significant experience over his four decades of practice, that experience was of no benefit to Acosta where Daley spent no time on the case until after benefits were obtained.

Daley admits in his reply brief, in a footnote, that "[w]ork in this matter was done by Ms. Marcus." (Doc. 24 at 10 fn. 2). Daley offers no explanation as to why he expended so much effort justifying his own rate of compensation when he cannot collect a fee under § 406(b) in this matter, nor why the body of his brief in favor of attorney's fees makes no mention of Marcus' work, nor her rate of compensation. (Doc. 20). Daley would be well advised to abide by the strictures of § 406(b) in future fee motions, and to seek fees for his own work only insofar as he actually performed substantial work in obtaining benefits.

It is therefore Marcus's experience that is relevant to determining the standard rate in this matter. Marcus was in practice for approximately five years when she worked on Acosta's case, and according to Daley "she was charging $350 for non-contingent matters." (Doc. 24 at 10 fn. 2). He also asserts, somewhat obscurely, that Marcus "was in practice for over 5 years at the time with the mean rate in 2014 of $205-$236 and the 95th percentile of $317-$370 similar to her non-contingent rate." (*Id*.). Applying the 2014 State Bar of Michigan economic survey referenced by Daley, Marcus' rate of hourly payment as an attorney with five years of experience might range between $160 (twenty-fifth percentile), $205 (mean), and $317 (ninety-fifth percentile). (*Id*. Ex. 5). If we consider public benefits attorneys generally, her rate of hourly payment might range between $180 (twenty-fifth percentile), $231 (mean), and $395 (ninety-fifth percentile). (*Id*.). While an argument could be made for the application of any of these figures, the Court finds that application of $250 per hour as a standard rate is reasonable. This figure exceeds the mean rate which Daley avers Marcus obtains, places her precisely at

16

the seventy-fifth percentile rate of attorneys with three to five years of experience in Michigan, and places her slightly above the mean for public benefits attorneys irrespective of experience.

Daley asserts that a total of 18.6 hours were spent on this case. (Doc. 20 Ex. D). In total, Daley seeks $25,023.00, *i.e.* twenty-five percent of Acosta's past-due benefits. (Doc. 20 at 2). Daley requests that the Court grant him $19,023.00 in fees, which is to say twenty-five percent of Acosta's past-due benefits minus $6,000.00 which he will seek from the ALJ under 42 U.S.C. § 406(a) for work performed at the administrative level. (Doc. 20 at 2). Dividing $19,023.00 by 18.6 hours produces an effective hourly rate of $1,022.74. This rate is more than double the presumptively valid $500 per hour figure.

Because Daley's proposed rate exceeds the *per se* reasonable rate under *Hayes*, the Court "may consider arguments designed to rebut the presumed reasonableness of the attorney's fee," including "consideration of what proportion of the hours worked constituted attorney time as opposed to clerical or paralegal time and the degree of difficulty of the case. *Hayes*, 923 F.2d at 422. By Daley's own admission, only 15.35 of these hours were completed by attorneys, and 3.25 hours were completed by a legal assistant. (*Id.*). Courts to consider this factor have not settled on a particular standard rate for paralegal or legal assistant time, but it is safe to say that such non-attorney professionals ought to be compensated at a rate lower than attorneys. *See Rego v. Comm'r of Soc. Sec.*, No. 3:12-CV-00034, 2014 WL 825219, at *4 (N.D. Ohio Mar. 3, 2014) (granting "$50.00 per hour for legal assistant hours"); *Rhoads v. Comm'r of Soc. Sec.*, No. 1:09-CV-789, 2012 WL 191756, at *2 (W.D. Mich. Jan. 6, 2012) ("The Court finds that recovery of [legal assistant hours] at the rate of $75.00 per hour is reasonable."), report and recommendation adopted, No. 1:09-CV-789, 2012 WL 202826 (W.D.

Mich. Jan. 23, 2012). Daley should thus recover a lesser rate for 3.25 of the hours expended on Acosta's case, and that fee should range between $100 and $150 per hour (*i.e.* a doubled rate to account for the likelihood of success discussed in *Hayes*).

One hour of time was expended by attorney Heather Freeman, also an attorney, who represents that she had approximately ten years of experience at the time she reviewed Acosta's case. (Doc. 20 Ex. C). Returning again to the State Bar of Michigan economic survey attached to Daley's reply brief, it appears that an attorney of non-specific specialization, with Freeman's experience, would demand compensation ranging somewhere between $192 per hour (twenty-fifth percentile), $273 (mean), and $455 per hour (ninety-fifth percentile). (Doc. 24 Ex. 5). As noted above, public benefits attorneys (no experience level specified) demand somewhere between $180 per hour and $395 per hour. (*Id.*). A figure of $350 per hour is within these margins, and reflects the additional skill which a Social Security benefits attorney with ten years of experience might be expected to demonstrate. Doubling this figure results in $700 per hour as a *per se* reasonable hourly fee under *Hayes*.

A bit of arithmetic is in order. Freeman's work took one hour at $700 per hour, resulting in a $700 fee. Solomonik's work took 3.25 hours at a rate of $150 per hour, resulting in a $487.50 fee. Finally, Marcus' work took 14.35 hours at a rate of $500 per hour, resulting in a $7,175 fee. In sum, a *per se* reasonable fee for the services of those individuals would be $8,362.50.[5] This equates to an effective hourly rate of $449.59.

---

[5] Per *Gisbrecht*, this figure is not the end of the Court's inquiry, but rather merely provides assistance in determining whether Daley's requested fee is reasonable. See Sykes v. Comm'r of Soc. Sec., 144 F. Supp. 3d 919, 924 (E.D. Mich. 2015) ("[N]umerous district courts in this circuit have continued to rely upon the Hayes 'floor' of 'twice the standard rate' as a relevant benchmark and one factor among others in the reasonability analysis.").

Daley's requested fee of $19,023.00 is approximately 2.2 times greater than the *per se* reasonable fee. This excess is particular stark given that the Court has erred on the high end of the scale when determining a "standard rate" of hourly payment. Having found that Daley's requested fees are not *per se* reasonable under *Hayes*, the Court must next consider whether the requested fees are, in fact, "reasonable."

Daley references only a single case granting hourly fees in excess of $1,000: *Szanyi v. Astrue*, No. 2:04–CV–412–PRC (N.D. Ind. Nov. 14, 2007), a matter in which Daley himself acted as lead attorney.[6] In that matter, the claimant was awarded $168,948.00, and $61,480.75 was held back for attorney's fees, to compensate for 27.10 hours of attorney work and 28.65 hours of paralegal and law clerk work, which equated to approximately $1,102.79 as an effective hourly rate. *Szanyi*, Doc. 42, *Opinion and Order*. In that consent case, Magistrate Judge Paul Cherry found that Daley's experience in Social Security litigation and the large amount of past-due benefits recovered for his client justified an unusually high reward. *Id.*

The court in *Vujnovich v. Colvin*, No. 2:10-CV-043 JD, 2013 WL 1343553, at *3 (N.D. Ind. Apr. 1, 2013) referenced the *Szanyi* matter, and noted that an hourly fee greater than $1,000.00 per hour would "likely not a reasonable rate in most cases." The undersigned has been unable to locate any other case in which a fee in excess of $1,000.00 per hour was found reasonable. *Cf. Laboy v. Colvin*, No. 2:11-CV-00596-RLH, 2014 WL 299172, at *2 (D. Nev. Jan. 27, 2014) ("This results in an effective hourly rate of $1,129.94. To this Court's knowledge, this would be the highest effective hourly rate ever awarded in a social security

---

[6] *Szanyi* remains unreported by Westlaw, and appears to be accessible only through the Northern District of Indiana's Electronic Filing System.

case in the Ninth Circuit."), vacated and remanded for other reasons, 631 F. App'x 468 (9th Cir. 2016).

In *Fritsche v. Colvin*, No. 2:12-CV-123 JVB, 2015 WL 4425998, at *2 (N.D. Ind. July 17, 2015), Daley moved for an award of fees which would result in an effective rate of compensation over $1,000.00 per hour, arguing that his fee in non-contingent matters was around $500.00 per hour. The court there concluded that the matter was "not overly complicated and was mostly handled by an associate at the firm," and thus granted a reduced fee at a rate of $366.70 per hour. *Id*.

It is notable that Daley himself, despite forty years of experience, appears to have obtained an effective rate greater than $1000 per hour only once, and that practitioners with similarly lengthy resumes are generally compensated at rates half that remunerative. Finding that Marcus' work merits compensation at a rate of $1,000.00 per hour would require jettisoning consideration of her experience and the difficulty of the case. This is to say that any consideration of whether the fee constitutes a windfall would go by the wayside. Abandonment of this consideration would establish a new rule that any fee is "reasonable" where it does not exceed twenty-five percent of the past-due benefits, and where the attorney did not commit a transgression justifying reduction in the fee. Such a finding would directly contradict the Sixth Circuit's rule pronounced in *Rodriguez* and *Geier*. Having neither the authority nor the inclination to disobey the Sixth Circuit's ruling, I find that Marcus' experience, her difficulty in achieving the result in this case, and the time spent in reaching the result in this matter, must be considered. In the light of Marcus' limited experience and the small number of hours spent on this case, a reduction in fees is in order.

Recent cases in this circuit have approved of fee agreements much lower than that proposed by Daley. In *Hunt v. Colvin*, No. CV 11-236-DLB, 2016 WL 3574398, at *3 (E.D. Ky. June 27, 2016), a disability benefits attorney requested that he be awarded $11,733.48 for twelve hours of work, resulting in an effective rate of $977.79 per hour. The court found that this amount would constitute a windfall, and reduced his rate to $500.00 per hour. *Id*. at 2. While the court in that matter did not make specific note of the attorney's experience, a web search reveals that the petitioner's attorney, Dennis Mahoney, was admitted to the State Bar of Ohio in 1990, and thus had approximately twenty-six years of experience at the time he represented his client in *Hunt*. *See* Dennis C. Mahoney, O'Connor Accani & Levy, http://www.oal-law.com/dennis-c-mahoney.html, last accessed November 15, 2016.

This is not to say that effective hourly rates approaching $1,000 are never found reasonable. However, these cases consistently involve a combination of a well-seasoned attorney, an extraordinarily high recovery of past-due benefits, and a difficult and complex dispute with the Commissioner. For instance, in *Whitehead v. Barnhart*, No. 1:04-1236-T, 2006 WL 681168, at *1 (W.D. Tenn. Mar. 14, 2006), a disability attorney with twenty-five years of experience recovered past-due benefits totaling $116,963.20, and sought a fee of $26,799.00 to compensate him for 27.3 hours of work. The *Whitehead* court found that the "agency disputed Claimant's entitlement in this case for five years after [the attorney] entered the picture," and that "there were numerous 'issues of material fact' before the court until [the attorney] persuaded the Commissioner that Claimant was disabled." *Id*. at *6. In light of these factors, the court found that the unusually high rate of hourly payment was justified. *See also Weems v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-12-2993, 2015 WL 3464130, at *1 (D.

21

Md. May 29, 2015) (approving of an effectively hourly rate of $944.22 where an attorney with more than twenty years of experience acted in a "highly effective and highly efficient" manner, obtaining remand on "two of only three arguments raised in [the] motion for summary judgment," which the court found to be a "unique circumstance[]").

Perhaps most demonstratively, in *Wummel v. Comm'r of Soc. Sec.*, No. 12-14860, 2016 WL 245287, at *3 (E.D. Mich. Jan. 21, 2016), District Judge Terrence Berg found that a fee award of $29,108.75 for 30.3 hours of work was permissible, equating to $960.68 per hour. The attorneys who performed the lion's share of the work in that matter were Heather Freeman, who spent one hour reviewing Marcus' work in this case, and Daley, the attorney seeking fees in this matter. Judge Berg noted that while the award was "high," it did not constitute a windfall because "the attorneys are highly experienced," with Freeman possessing ten years of experience, and over forty years in Daley's case. *Id*. Further, Judge Berg noted the submission of an "exceptionally strong letter in support of Petitioner's receipt of the fees," which explained that the claimant "had been trying to obtain social security benefits without success since 2006, until he hired [Daley and Freeman] to take his case." *Id*. Finally, Judge Berg noted that the arguments in that case "involved complex res judicata issues . . . in addition to the more common arguments concerning whether the ALJ had properly assessed the Plaintiff's functional limitations."

Comparison to *Wummel* demonstrates why Daley's requested fees in this case are not reasonable. Marcus has but five years of experience in comparison to the combined fifty years of experience possessed by Daley and Freeman. The legal arguments in this case, while not notably simplistic, did not require evaluation of complex and unusual issues like the res

judicata effect of a past decision of the Commissioner. Finally, while Daley also submits a letter from the client in this matter, Acosta expresses mere "support" for Daley's fee petition, unlike the exuberant praise received from the client in *Wummel*. (Doc. 26). To grant Daley's motion for attorney's fees in this case at the rate he requests would elevate the value of Marcus' work to a degree inconsistent with her five years of experience. Somewhat ironically, granting a fee rate higher than that issued in *Wummel* would likewise degrade the value of the work of Daley and Freeman. Daley has not carried his burden in demonstrating that the fee he seeks is reasonable, and the rebuttable presumption in favor of the fee agreement in this case cannot sustain the proposed fee.

In summation, I find that granting Daley's motion for attorney fees at an effective rate of $1,022.74 would be an unprecedented award, one inconsistent with Marcus' limited experience, the middling nature of complexity in this case, and the lack of other factors which would counsel such an extreme rate of compensation. Instead, I find that it is appropriate to compensate the members of Daley's firm in the amount of $8,362.50, being comprised of $700 for Freeman's work, $487.50 for Solomonik's work, and $7,175 for Marcus' work. This equates to an effective hourly rate of $449.59.

As noted above, the attorney-generated delay in this matter should also result in a discounting of fees to the tune of $388.15, which brings the total, final compensation under § 406(b) to $7974.35.

This figure compensates Freeman at a rate above the mean for both attorneys with five years of experience in Michigan and public benefits attorneys in Michigan, grants Solomonik compensation at the higher end of non-attorney staff, and grants Freeman compensation well

above the mean for both attorneys with ten years of experience and public benefits attorneys in Michigan. This figure, while admittedly not the product of mathematical axioms, represents the Court's best attempt to fairly and reasonably compensate Marcus, Freeman, and Solomonik in light of their experience, standard rates of compensation, and the difficulty of the case, amongst other factors.

### D.    Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that the foregoing motion for attorney fees under 42 U.S.C. § 406(b) **(Doc. 20)** be **GRANTED IN PART** and that attorney fees be awarded in the amount of $7974.35.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th

Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 17, 2016

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: November 17, 2016

By s/Kristen Castaneda
Case Manager